**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| v. | § | **CR. No. c-09-1046-5** |
| | § | **(C.A. No. C-12-270)** |
| **JORGE LUIS GOMEZ ROSALES,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING MOTION
TO VACATE, SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jorge Luis Gomez Rosales' (Gomez Rosales) motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 322.[1] The Court has reviewed the § 2255 motion and concludes that summary dismissal pursuant to Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS (2012) (2255 Rules) is appropriate. For the reasons discussed herein, Gomez Rosales' motion to vacate is DENIED, and he is DENIED a certificate of appealability.

### I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II.  FACTS AND PROCEEDINGS

Gomez Rosales was charged in a multi-count superseding indictment with one count of conspiracy to transport unlawful aliens in the United States, which caused serious bodily injury to and placed in jeopardy the lives of other persons, and twelve counts of aiding and abetting his co-

---

[1] Docket entry references are to the criminal case.

defendants which endangered named aliens. D.E. 127. The conspiracy was uncovered when Border

Patrol agents attempted to stop a suspected smuggling vehicle on November 24, 2009. D.E. 1. That

vehicle fled, drove off the highway into a field, through a fence, and ultimately over a 45 foot cliff.

The seventeen passengers were ejected and nearly all were injured, some seriously. Originally, three

persons were arrested (Id.) and eight others were detained as material witnesses, including Gomez

Rosales. D.E. 3.Counsel was appointed for Gomez Rosales as a material witness. D.E. 27. After the

collision, ERM, a minor was arrested as a material witness. D.E.  29.

In late December 2009, an indictment was issued naming four defendants and charging them

with fourteen counts of conspiracy and aiding and abetting transporting unlawful aliens which

endangered the lives of thirteen named aliens, including Gomez Rosales. D.E. 69. Patricio Rebollar,

the driver and one of the original defendants, was the first to plead guilty in January 2010. D.E. 100.

Depositions of the material witnesses were taken in February 2010.

In March 2010, a thirteen count superseding indictment was issued naming Gomez Rosales

as one of the co-defendants and omitting his name from the list of named aliens who were

endangered. D.E. 127. He appeared in federal court on March 29, 2010, in response to the

superseding indictment. Minute Entry, March 29, 2010. New counsel was appointed. D.E. 135. D.E.

168.

Two months later, Gomez-Rosales entered into a plea agreement with the government and

was rearraigned. D.E. 168, Minute Entry May 24, 2010. In exchange for his guilty plea to Count 1

and waiver of appellate and § 2255 rights, the government agreed to dismiss Counts 2-13, to

recommend that Gomez Rosales receive two points credit for acceptance of responsibility, and to

recommend a sentence within the guideline range. D.E. 168 at ¶¶ 1-2. The plea agreement waiver

of Gomez Rosales' right to appeal and to file a § 2255 motion stated:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

D.E. 168 at ¶ 7 (emphasis in original). The agreement was signed by both Gomez Rosales and his counsel. Id. at 5.

At rearraignment, the Court questioned Gomez Rosales about the indictment. Gomez Rosales testified that his attorney read it to him in Spanish and explained the charges against him. He was satisfied with counsel's representation. D.E. 299 at 8. Next, the Court questioned Gomez Rosales under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily waiving his rights to attack his conviction and sentence on appeal and by a motion to vacate sentence.

> 3 THE COURT: Paragraph 7 on Page 3,
> 4 Mr. Gomez-Rosales, contains a provision which we call a
> 5 waiver of right to appeal. It's a waiver of not only a
> 6 right to appeal directly your sentence and conviction,
> 7 but also to collaterally attack it under 28 United
> 8 States Code, Section 2255. That's another federal
> 9 statute.
> 10 Were you aware that your Plea Agreement
> 11 contained that waiver before you signed it?
> 12 DEFENDANT GOMEZ-ROSALES: Yes.
> 13 THE COURT: Did you discuss the waiver with
> 14 your lawyer before you signed it?
> 15 DEFENDANT GOMEZ-ROSALES: Yes.
> 16 THE COURT: Do you feel like you understand
> 17 the waiver and how it affects your rights in this case?

18 MS. VILLARREAL-KUCHTA: He's saying that he
19 didn't understand very well what you just mentioned.
20 THE COURT: Okay. It might have been confusing
21 the way I asked the question.
22 Do you understand you are giving up
23 certain rights to appeal your conviction and sentence?
24 DEFENDANT GOMEZ-ROSALES: Oh, yes.
25 THE COURT: Okay. All right. Do you have any
1 questions you want to ask me about the waiver and how it
2 affects your rights in this case?
3 DEFENDANT GOMEZ-ROSALES: No, that's fine.

D.E. 299 at 21-23.

During discussion of the plea agreement, counsel advised the Court that Gomez Rosales had difficulty understanding the conspiracy charge, and wanted to inform the Court that he was pleading guilty to conspiracy but he was only involved with one trip. Id. at 15-16. The Court advised Gomez Rosales of the maximum punishment of up to 20 years imprisonment due to the enhancement for endangerment, a fine of not more than $250,000, no more than 3 years supervised release, and a special assessment of $100. Id. at 18-19. The Court described supervised release and the sentencing process. Id. at 18-19. Gomez Rosales testified he understood. Id. at 23. The Court further informed Gomez Rosales of the various trial rights available to him, he testified that he understood those rights and understood that if he pleaded guilty he would be giving up those trial rights. Id. at 24-25.

The government provided a factual recitation regarding the conspiracy, Gomez Rosales' role as brush guide on more than one occasion, and described the various injuries of the transported aliens. Id. at 28-31. Gomez Rosales denied some of the conduct and claimed that he "just helped the guide this time and the only time I helped him." Id. at 32. He denied using a cell phone in the brush. Id. He admitted joining in the conspiracy to transport aliens that one time and pled guilty to the conspiracy count of the indictment. Id. at 34.

**B.      Presentence Investigation Report and Sentencing**

4

At the conclusion of rearraignment, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report (PSR). D.E. 169. The PSR calculated Gomez Rosales' base offense level as 12. D.E. 198 at ¶ 42. The base level was enhanced by 3 because seventeen aliens were involved, by 2 for an unaccompanied minor, by 2 more because the defendant created a substantial risk of death or serious bodily injury to another person, and by 6 because a person sustained permanent or serious bodily injury. Id. The total offense level was 25. Id. at ¶ 49. No credit was given for acceptance of responsibility. Id. at ¶ 48. Gomez Rosales had no previous criminal history. Id. at ¶ 54. The resulting guideline range was a term of imprisonment of 57-71 months with a statutory maximum sentence of 20 years. Id. at ¶¶ 64-65.

Gomez Rosales' counsel filed objections to the PSR before it was final. D.E. 187. Counsel also filed a motion to withdraw his guilty plea. D.E. 188. Gomez Rosales claimed that he worked as a guide in the brush only once in exchange for a discounted fee to be smuggled and that he had nothing to do with the conduct of the driver . He claimed he told the driver to slow down and to stop. D.E. 169. Gomez Rosales objected that many of the statements in the PSR describing the facts were false. Id. Probation summarized the objections and responded. D.E. 200.

A revised PSR was filed. D.E. 215. That PSR included details about a broader conspiracy involving more aliens and affected the calculation of Gomez Rosales' offense level. The broader conspiracy smuggled more than 100 aliens. Id. at ¶ 62. Gomez-Rosales' base offense level remained 12, but was enhanced by 9 levels rather than 3 due to the smuggling of more than 100 aliens. Id. Additionally, Gomez Rosales was enhanced by 2 additional points for using a minor to commit the offense. The remaining enhancements remained unchanged. Gomez Rosales' revised total offense level was 33. Id. at ¶¶ 62-70. His revised sentencing range was 135 to 168 months. Id. at ¶ 85. Sentencing was continued to allow Gomez Rosales to address the new calculations. See D.E. 304.

Sentencing was held in January, 2011. Minute Entry, January 20, 2011. The government presented testimony from co-defendant Patricio Rebollar, the driver of the vehicle, and from a government agent. D.E. 305. Rebollar testified that he pled guilty to the offense of transporting unlawful aliens; that his job was to pick up illegal aliens; and he worked for the smuggling operation for 4-5 years. Id. at 6-7. On November 24, 2009, he was the driver of a vehicle that picked up a group of aliens in Falfurrias. Id. During his employment by the organization, he picked up groups of aliens once or twice a month. Each time, the aliens had a guide with them to assist them through the brush to get to the pick up point. Id. at 7. The guides were not always the same. Id. at 7-8. Rebollar testified that the brush guide on November 24, 2009, was Gomez Rosales, whom he knew by his nickname. He had picked up Gomez Rosales before November 24, 2009. Id. at 8. Rebollar testified that he picked up Gomez Rosales more than five times before, perhaps more than ten times. Id. at 9. Each time he picked up Gomez Rosales he had 10 to 15 other aliens with him. Id. at 9. On November 24, 2009, Gomez Rosales had a number of aliens with him that was consistent with the usual number. Id. at  10. Rebollar testified that he was in telephone contact with Gomez Rosales before he picked up the group of aliens. Id. at 13. Rebollar testified that he had not yet been sentenced and was hoping for a favorable sentencing recommendation from the government in exchange for his testimony. Id. at  11-12.

On cross-examination, Rebollar testified that he had Gomez Rosales' telephone number in his phone, that he recognized Gomez Rosales' voice when he called, and they usually socialized after each trip. Id. at 17-19. Rebollar also testified that he picked up Gomez Rosales every two to three months. It may not have been ten times, but was more than five times going back to 2008. Id. at 23-24. Rebollar testified that Gomez Rosales did not try to get him to stop after Rebollar left the roadway trying to evade apprehension. Id. at 25.

6

The ICE agent testified about his investigation of the smuggling ring. Most of the aliens in the vehicle on November 24, 2009, were from Guatemala. Gomez Rosales is from Mexico and was originally held as a material witness. Id. at 34. Several of the co-defendants and material witnesses identified Gomez Rosales as the brush guide, rather than as an alien in the group being smuggled. Id. at 34-35. When interviewed while he was considered a material witness, Gomez Rosales told investigators that he was being smuggled and that he could not identify the driver or the guide. Id. at 34.

One of the material witnesses was a juvenile, ERM, who told agents that he was working as a brush guide in training. Id. at 36. He identified Gomez Rosales as the guide he was working with on November 24, 2009. Id. He rode in the front seat of the truck along with Rebollar and Gomez Rosales when they were picked up near Falfurrias. Id. at 37. ERM had a telephone which reflected a call at 7:30 the morning of the collision to Gomez Rosales while the group was still in the brush. Id. at 37-38. He called Gomez Rosales who had gone out to the road to see if it was clear. Id. Gomez Rosales' phone number and nick name appeared in the phone logs of other members of the smuggling organization. Id. at 38.

The agent also checked immigration records on Gomez Rosales and determined that he had been apprehended by immigration twice before November 24, 2009. Id. at 39, 46. He was apprehended with several other members of the smuggling conspiracy and their relatives. Id. at 40-41. The government offered Gomez Rosales' deposition, which was taken as a material witness, into evidence at sentencing. Id. at 49.

This Court presided over a trial related to the conspiracy at which Rebollar testified, heard testimony at sentencing, reviewed the PSRs, and found that Gomez Rosales joined in this conspiracy several months before November 24, 2009. Id. at 60. The Court found that the number of aliens

transported by Gomez Rosales far exceeded 100 and overruled the objection to the 9 level enhancement. Id. at 61. The Court found that Gomez Rosales used a minor, who was horribly injured in the commission of the offense, and overruled the objections to the 2 level increase and the objection to reckless endangerment. Id. The Court also overruled the objection to permanent life-threatening injury; ERM was paralyzed and many others were injured. Id. at 62. The Court granted Gomez Rosales two level acceptance of responsibility, despite Gomez Rosales' deposition testimony.  With acceptance of responsibility, Gomez Rosales' total offense level was 31, resulting in a guideline range of 108-135 months. Id. at 67.

The Court sentenced Gomez Rosales to 114 months imprisonment, followed by 3 years supervised release, $33,860.55 in restitution to be paid jointly and severally with other co-defendants ordered to pay restitution, and a special assessment of $100. Id. at 69-70. The Court reminded Gomez Rosales' that he waived his right to appeal his sentence and conviction. Id. at 70. The government moved to dismiss the remaining counts against Gomez Rosales. Id. at 71. Gomez Rosales complained that he did not understand that he waived his right to appeal. Id. at 72. Judgment was entered January 24, 2011. D.E. 263.

Gomez Rosales filed a timely notice of appeal. D.E. 265. Counsel was appointed for him. A review of the Fifth Circuit's docket reveals that Gomez Rosales raised three issues on appeal, whether his plea was knowing and voluntary, whether his plea agreement waiver barred his appeal, and whether the Court committed error when it denied Gomez Rosales' motion to withdraw his plea agreement. Appellant's Brief at p. 2. The government responded by filing a motion for summary dismissal in light of the waiver of appeal in the plea agreement. The Fifth Circuit granted the motion and dismissed the appeal. D.E. 319.

The Clerk received Gomez Rosales § 2255 motion on August 27, 2011. D.E. 322. It is

timely.

## III.  MOVANT'S ALLEGATIONS

Gomez Rosales raises several issues of ineffective assistance of counsel based upon counsel's, 1) advice to plead guilty, 2) failure to advise him of enhancements that led to his 114 month sentence, 3) failure to seek a downward departure for minor role, 4) failure to object to violation of his due process right to avoid disparate sentences, and 5) failure to move for fast track departure downward and his resulting sentence disparity with others.

## IV.  DISCUSSION

**A.**   **28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct her sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.**   **The Fifth Circuit Found Gomez Rosales' Waiver to Be Enforceable**

Gomez Rosales entered into a plea agreement in which he waived his right to file a post-conviction motion to vacate, set aside, or correct judgment pursuant to 28 U.S.C. § 2255. Before the Court can consider Gomez Rosales' substantive complaints, the Court must determine whether his waiver of his right to file the motion before the Court is enforceable. Gomez Rosales' claim of

ineffective assistance does not automatically relieve him of his waiver of appeal and § 2255 post-conviction proceedings. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish." Id. at 343 (internal citations omitted).

Thus, to consider his grounds for relief, this Court would have to find that Gomez Rosales' plea was either unknowing or involuntary and the plea agreement was unenforceable. These are the very issues that Gomez Rosales raised in his appeal to the Fifth Circuit. The Fifth Circuit summarily dismissed his appeal on the government's motion to enforce the plea agreement. Because the Fifth Circuit's ruling enforced the plea agreement despite Gomez Rosales' challenge to it, this Court may not consider the validity of the plea or plea agreement. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (citing United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)). Accordingly, because the Court must enforce the plea agreement, the Court may not consider the merits of Gomez Rosales' issues.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Gomez Rosales has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Gomez Rosales is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Gomez Rosales' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 322) is DENIED. He is also denied a Certificate of Appealability

It is so **ORDERED.**

**SIGNED** on this 26th  day of November, 2012.

John D. Rainey
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE